## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>Plaintiff,<br><br>vs.<br><br>CENTERSTATE BANK CORPORATION, JAMES H. BINGHAM, MICHAEL J. BROWN, SR., CHARLES DENNIS CARLTON, MICHAEL F. CIFERRI, JOHN C. CORBETT, JODY DEAN DREYER, GRIFFIN A. GREENE, JOHN H. HOLCOMB, III, CHARLES W. MCPHERSON, RICHARD MURRAY, IV, GEORGE TIERSO NUNEZ, II, THOMAS E. OAKLEY, G. RUFFNER PAGE, JR., ERNEST S. PINNER, WILLIAM KNOX POU, JR., DANIEL R. RICHEY, DAVID G. SALYERS, JOSHUA A. SNIVELY, and MARK W. THOMPSON,<br><br>                  Defendants. | Civil Action No.<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against CenterState Bank Corporation ("CenterState" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which CenterState will merge with and into South State Corporation ("South State") with South State continuing as the surviving corporation (the "Proposed Transaction").

2.     On January 27, 2020, CenterState and South State issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated January 25, 2020 (the "Merger Agreement") to merge CenterState with South State. Under the terms of the Merger Agreement, each CenterState stockholder will receive 0.3001 shares of South State common stock for each share of CenterState common stock they own (the "Merger Consideration").

3.     On March 16, 2020, defendants caused to be filed a joint proxy statement/prospectus on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement, which recommends that CenterState stockholders vote

in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things, the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Keefe, Bruyette & Woods ("KBW").  Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, CenterState's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so

as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because defendants own and operate several banking branches located in this District and therefore have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of CenterState.

9.     Defendant CenterState is a Florida corporation, with its principal executive offices located at 1101 First Street South, Suite 202, Winter Haven, Florida 33880.  CenterState is a financial holding company that provides a full range of consumer and commercial banking services to individuals, businesses and industries through its national bank subsidiary, CenterState Bank, N.A. (the "Bank").  CenterState's common stock trades on the NASDAQ Global Select Market under the ticker symbol "CSFL."

10.    Defendant James H. Bingham ("Bingham") has been a director of the Company since 1999 and is a director of the Bank.

11.     Defendant Michael J. Brown, Sr. ("Brown") has been a director of the Company since 2018.

12.     Defendant Charles Dennis Carlton ("Carlton") has been a director of the Company since 2008.

13.     Defendant Michael F. Ciferri ("Ciferri") has been a director of the Company since 2014.

14.     Defendant John C. Corbett ("Corbett") has been the Company's President and Chief Executive Officer ("CEO") since July 2015, a director of the Company since 2011 and is a director of the Bank.  Defendant Corbett previously served as CEO of the Bank from 2003 to September 2017.

15.     Defendant Jody Jean Dreyer ("Dreyer") has been a director of the Company since 2018.

16.     Defendant Griffin A. Greene ("Greene") has been a director of the Company since 2012.

17.     Defendant John H. Holcomb, III ("Holcomb") has been a director of the Company since 2019.

18.     Defendant Charles W. McPherson ("McPherson") is the Company's lead independent director and Vice Chairman of the Board and has been a director of the Company since 2012.

19.     Defendant Richard Murray, IV ("Murray") is CEO of the Bank and has been a director of the Company and the Bank since 2019.

20.     Defendant George Tierso Nunez II ("Nunez") has been a director of the Company since 2004.

21.     Defendant Thomas E. Oakley ("Oakley") has been a director of the Company since 2002 and was a founding director of the Bank.

22.     Defendant G. Ruffner Page, Jr. ("Page") has been a director of the Company since 2019.

23.     Defendant Ernest S. Pinner ("Pinner") has been the Executive Chairman of the Board since July 2015 and a director of the Company since 2002. Defendant Pinner previously served as President and CEO of the Company and was the founding President and CEO of the Bank.

24.     Defendant William Knox Pou, Jr. ("Pou") has been a director of the Company since 2012.

25.     Defendant Daniel R. Richey ("Richey") has been a director of the Company since 2014.

26.     Defendant David G. Salyers ("Salyers") has been a director of the Company since 2017.

27.   Defendant Joshua A. Snively ("Snively") has been a director of the Company since 2012.

28.   Defendant Mark W. Thompson ("Thompson") has been a director of the Company since 2017 and President of the Bank since September 2017.

29.   Defendants identified in paragraphs 10-28 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

30.   South State is a financial services company founded in 1934 and headquartered in Columbia, South Carolina, with approximately $15.9 billion in assets.  Its primary subsidiary, South State Bank, provides consumer, commercial, mortgage, and wealth management solutions throughout the Carolinas, Georgia and Virginia.  South State's common stock trades on the NASDAQ Global Select Market under the ticker symbol "SSB."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

31.   CenterState is a financial holding company incorporated on September 20, 1999 under the laws of the State of Florida.  Through its national bank subsidiary, the Bank, it provides a full range of consumer and commercial banking services to individuals, businesses and industries.  Headquartered in Winter Haven, Florida, as

of December 31, 2019, the Company had a 149 bank branch network located throughout Florida, Georgia, and Alabama, as well as a loan production office in Florida and a loan production office in Georgia. CenterState is among the largest Florida-based community banking organizations in terms of publicly available deposit data as of December 31, 2019.

32.     CenterState also operates, through its Bank, a correspondent banking and capital markets service division for over 650 small and medium sized community banks throughout the United States. Based primarily in Atlanta, Georgia and Birmingham, Alabama, this division earns commissions on fixed income security sales, fees from hedging services, loan brokerage fees and consulting fees for services related to these activities. The Bank also owns CBI Holding Company, LLC, which in turn owns Corporate Billing, LLC, a transaction-based finance company headquartered in Decatur, Alabama, that provides factoring, invoicing, collection and accounts receivable management services to transportation companies and automotive parts and services providers throughout the United States and Canada.

33.     CenterState has recently grown through a series of acquisitions, including:

- Community Bank of South Florida, Inc., in March 2016, which added

approximately $453 million in deposits;

- Hometown of Homestead Banking Company, in March 2016, which added approximately $253 million in deposits;

- Platinum Bank Holding Company, in April 2017, which added approximately $520 million in deposits;

- Gateway Financial Holdings of Florida, Inc., in May 2017, which added approximately $708 million in deposits;

- HCBF Holding Company, Inc., in January 2018, which added approximately $719 million in deposits;

- Sunshine Bancorp, Inc., also in January 2018, which added approximately $1.8 billion in deposits;

- Charter Financial Corporation, in September 2018, which added approximately $1.3 billion in deposits; and

- National Commerce Corporation, in April 2019, which added approximately $3.5 billion in deposits.

34.    At December 31, 2019, the Company had total consolidated assets of $17.1 billion, total consolidated loans of $12.0 billion, total consolidated deposits of $13.1 billion, and total consolidated shareholders' equity of $2.9 billion.

35.    On January 27, 2020, the Company announced strong fourth quarter

2019 financial results. The Company increased return on average common equity to 9.8% in the fourth quarter 2019 compared to 7.6% in the previous quarter. Book value per share increased to $23.14 per share during the quarter, compared to $20.60 at December 31, 2018. Diluted earnings per share ("EPS") were $0.56 in the fourth quarter 2019 compared to $0.43 in the previous quarter, and adjusted EPS (non-GAAP) were $0.57 in the fourth quarter 2019 compared to $0.53 in the previous quarter. The Company also saw revenue of $208.3 million in the fourth quarter 2019, an increase of $4.8 million, or 2.4%, from the previous quarter.

**The Proposed Transaction**

36. On January 27, 2020, CenterState and South State issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> WINTER HAVEN, Fla. & COLUMBIA, S.C.– CenterState Bank Corporation (NASDAQ: CSFL) ("CenterState"), the parent company of CenterState Bank, and South State Corporation (NASDAQ: SSB) ("South State"), the parent company of South State Bank, jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals with a total market value of approximately $6 billion to create a leading Southeastern-based regional bank.

> Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, CenterState shareholders will receive 0.3001 shares of South State common stock for each share of CenterState common stock they own. CenterState shareholders will own approximately 53% and South State shareholders will own approximately 47% of the combined company.

The combined company will operate under the South State Bank name and will trade under the South State ticker symbol SSB on the Nasdaq stock market. The company will be headquartered in Winter Haven, Florida and will maintain a significant presence in Columbia and Charleston, South Carolina; Charlotte, North Carolina; and Atlanta, Georgia.

Robert R. Hill, Jr., CEO of South State, will serve as Executive Chairman of the combined company. John C. Corbett, CEO of CenterState, will be CEO of the combined company. The Board of Directors of the combined company will consist of sixteen directors evenly split between the two legacy companies.

"We are excited to partner with CenterState," said Robert R. Hill, Jr. "We have great respect for John, the management team and the company CenterState has built. This is a great combination of cultures, which will create tremendous value for our shareholders."

"We have known and admired Robert and his team for over a decade, and we believe our two organizations are an outstanding fit," said John C. Corbett, CEO of CenterState. "Combining these two high-performing teams will allow us to build an even stronger company together."

\*\*\*

The merger will combine the executive management teams from both organizations. In addition to Robert Hill, Executive Chairman, and John Corbett, CEO, the executive team of the combined company will include three members from each legacy company.

The merger is expected to close in the third quarter of 2020, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

## Insiders' Interests in the Proposed Transaction

37.    CenterState insiders are the primary beneficiaries of the Proposed

Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of CenterState.

38.     Notably, certain Company insiders will secure positions for themselves with the combined company under the terms of the Merger Agreement.  For example, defendant Corbett will serve as CEO of the combined company, and defendant Murray will serve as the President of the combined company and Senior Executive Vice President of the combined company bank.  William E. Matthews, the current Executive Vice President and Chief Financial Officer ("CFO") of CenterState, will serve as CFO of the combined company and combined company bank.  Steven D. Young, the current Executive Vice President and Chief Operating Officer of CenterState, will serve as the Chief Strategy Officer of the combined company and combined company bank.  The Merger Agreement also provides that the board of directors of the combined company will consist of sixteen directors, eight of whom will be selected from the current members of CenterState's Board. Defendants Corbett, Pinner, and McPherson have already been selected to serve on the new board, and defendant McPherson will serve as Lead Independent Director of the board of directors of the combined company.

39.     Further, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers are set to receive substantial cash severance payments, as set forth in the following table:

| Named Executive Officers | Cash[1] | Equity[2] | Pension / NQDC[3] | Perquisites / Benefits[4] | Tax Reimbursement[5] | Total |
|---|---|---|---|---|---|---|
| John C. Corbett | $ 6,175,511 | $ 2,236,612 | $ — | $ — | $ — | $ 8,412,123 |
| Jennifer L. Idell | $ 1,750,000 | $ 477,986 | $ — | $ — | $ — | $ 2,227,986 |
| Stephen D. Young | $ 3,741,490 | $ 1,095,214 | $ — | $ — | $ — | $ 4,836,704 |
| Richard Murray, IV | $ 1,425,000 | $ 343,689 | $ 2,529,105 | $ 37,381 | $ — | $ 4,335,175 |
| William E. Matthews, V | $ 1,353,750 | $ 343,689 | $ 2,529,105 | $ 25,261 | $ — | $ 4,251,805 |
| Ernest S. Pinner[6] | $ — | $ — | $ — | $ — | $ — | $ — |

## **The Registration Statement Contains Material Misstatements or Omissions**

40.     Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to CenterState's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

41.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by KBW.

### *Material Omissions Concerning KBW's Financial Analyses*

42.     The Registration Statement describes KBW's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the

description of KBW's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, CenterState's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on KBW's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

43.    With respect to KBW's *South State Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the estimated excess cash flows that South State could generate over the period from January 1, 2020 through December 31, 2024 as a stand-alone company; (ii) the definition of how the excess cash flows were calculated; (iii) South State's implied terminal value at the end of that period; (iv) South State's estimated 2025 earnings; and (v) quantification of the inputs and assumptions underlying the discount rate range of 7.0% to 11.0%.

44.    With respect to KBW's *CenterState Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the estimated excess cash flows that CenterState could generate over the period from January 1, 2020 through December 31, 2024 as a stand-alone company; (ii) the definition of how the excess cash flows were calculated; (iii) CenterState's implied terminal value at the end of that period; (iv) Centerstate's estimated 2025 earnings; and (v) quantification of the inputs and assumptions underlying the discount rate range of 7.0% to 11.0%.

45.     With respect to KBW's *Pro Forma Combined Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the estimated excess cash flows that the pro forma combined entity could generate over the period from January 1, 2020 through December 31, 2024 as a stand-alone company; (ii) the definition of how the excess cash flows were calculated; (iii) the pro forma combined entity's implied terminal value at the end of that period; (iv) the pro forma combined entity's estimated 2025 earnings; and (v) quantification of the inputs and assumptions underlying the discount rate range of 6.5% to 10.5%.

46.     With respect to KBW's *Financial Impact Analysis*, the Registration Statement fails to disclose: (i) the specific accretion figures to South State's estimated 2020 EPS, estimated 2021 EPS, and estimated 2022 EPS; (ii) the specific dilution figures to South State's estimated tangible book value per share as of June 30, 2020; (iii) the specific accretion figures to CenterState's estimated 2022 EPS; and (iv) CenterState's and South State's respective estimated 2022 EPS.

47.     With respect to KBW's *South State and CenterState Selected Companies Analysis*, *Pro Forma Selected Companies Analysis*, and *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics observed for each of the companies and transactions analyzed.

48.     The omission of this information renders the statements in the "Opinion of CenterState's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

49.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information, Plaintiff and the other CenterState stockholders will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the data and inputs underlying the valuation analyses performed by the Company's financial advisor, KBW.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

53.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

54.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

56.     Plaintiff repeats all previous allegations as if set forth in full.

57.     The Individual Defendants acted as controlling persons of CenterState within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CenterState, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and,

therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

60.   In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61.   By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, CenterState's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of CenterState, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to CenterState stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: April 14, 2020                                **WEISSLAW LLP**

                                                     /s/ *Michael A. Rogovin*
                                                     Michael A. Rogovin
                                                     Georgia Bar No. 780075
                                                     476 Hardendorf Ave. NE
                                                     Atlanta, GA 30307
                                                     Tel.: (404) 692-7910
                                                     Fax: (212) 682-3010
                                                     mrogovin@weisslawllp.com


                                                     *Attorneys for Plaintiff*